If we switch panels, we'll call the next case. Case number 14-4703, In the Interest of Edgar C., a minor. If both attorneys would step up and identify yourselves for the record. Good morning, Your Honors. My name is Brian Reyna. I'm with the Office of the State Appellate Defender, and today I'll be representing the juvenile appellant, Edgar C. Good morning, Your Honors. I'm Heather Clark. I'm on behalf of the people of the state of Illinois. How do you pronounce your last name? Clark. Okay. We mispronounced it. I apologize in advance. Mr. Reyna, I know how to say your name. All right. Please be seated. Mr. Reyna, you may begin. And if you wish, you could save out some time for rebuttal. Would you like to do that? With your permission, I would ask for five minutes. All right. Thank you very much. You're welcome. And now you may proceed. I have a question. I got this mixed up with the last case, but it's really this case, and now I know what I'm doing. Okay. Excellent. I hope I do, too. All right. But Edgar C., when did he turn 21? He turned 21. His birthday is January 6, 1997. So I believe he hasn't turned 21. So it would be 21, January 16, 2018. Would you agree with that statement? Yes. All right. Okay. All right. Anything else right now? No, sir. Okay. You may proceed. There's multiple issues. Are you going to focus on a couple or what? Your Honor, I plan to focus on the first argument today. All right. And this is a case where trial counsel was ineffective for failing to file a motion to quash arrest and suppress evidence where she knew that police arrested Edgar, a 16-year-old African-American boy, without probable cause or a warrant, while he was walking down the street in his own Southside neighborhood. Edgar did not match the description of the people that took the complainant, Jabril Brown's cell phone. What were the descriptions? There were two officers that gave descriptions of the people they were looking for, and both officers ultimately agreed the descriptions were a boy in a purple jumpsuit, a boy in a white T-shirt and do-rag, and a person in all black. Was there a further description about that purple jumpsuit? The purple jumpsuit had black stripes on the sleeve. All right. And in this case, didn't the police officers observe and wasn't one of the individuals at that location near the show-up wearing a purple jacket with black stripes on the sleeves? Yes, there was a person near the show-up who was wearing a purple jacket with black stripes on the sleeves. Would you consider that like a fairly specific description or not? I don't think that's a very specific description because it actually contains no physical characteristic of the person themselves. Well, but weren't there other descriptions that they were young male blacks? One of them had on a black jumpsuit, but more specifically a purple jacket with a black stripe, then another individual in black or dark clothing, and then another individual with a white shirt and a do-rag, but also that they were looking for young male blacks. That's correct, Your Honor, but we know from the state's evidence primarily that Edgar was not wearing any of those clothes. That's right. In fact, the complaining witness later said that they had changed clothes. He actually said that two of them had switched clothes, but the boy in the black jacket who he identified in court as Diamante was wearing the same thing during the show-up and that he identified the boy in the black jacket during the show-up. All right. Well, let's get back to the probable cause and move to really a Terry step. Okay. Is it your position that there was absolutely no reasonable suspicion that criminal activity was foot, because in addition to the description, we have a location close by, we have a time frame in close proximity to the offense, and then we have physical descriptions that actually meet the descriptions given. A Terry stop requires individualized suspicion, and there was nothing that specifically related to my client that would have justified a Terry stop. He was not wearing those clothes that were described. Is that how we're looking at this? We're looking at we're going to take now an individual person and then we have to look at what they had for that person? Is that what you're suggesting? Absolutely, Your Honor. And that's supported by some of the cases I cited in my brief, Jackson, Thomas, Searles, stateside. Yeah. So before this show-up takes place, there's a description of an individual with a purple jacket and it has a stripe on it, and they see that person. Now, I know you don't think that's a very specific description, but there was more. Like I said, young male, black, certain age, I thought. The time was not too long after the offense. The location was close proximity to where the offense occurred. So are you basically saying the police should ignore the purple jacket with the stripes when, I mean, that's probably as specific as you're going to get as far as a piece of clothing. A few points, actually. Again, that wasn't my client, the person with the purple. And that client might have an argument as to why. At the time the police get the description, they do not have an identification of your client. The whole purpose of going there, stopping them, briefly detaining them, is to rule in or rule out. But we don't look at this equation now with deciding whether your client was wearing that jacket. We're looking at this as to whether one of the individuals in the group had on a black jacket with a stripe and another individual had on dark clothing. And, correct me if I'm wrong, did someone have on a white T-shirt? There was actually no testimony or evidence suggesting that anybody stopped had a white T-shirt. Okay. But, again, under the cases I cited, the police need individualized suspicion. And the only thing that matched my client who they stopped was that he was an African-American teenager. He was not wearing the clothes that were given to police. The police did not know the age of the people they were looking for. Was he wearing dark clothing? Detective Watts said he was not sure what he was wearing but thought it might have been dark clothing. But, again, they knew three people were involved who they were looking for. And we know the person wearing black was Diamante because he's been identified as the person wearing black. So even if my client was wearing dark clothing, that's a broad term and that would not have given the police reasonable suspicion to stop my client. Did the defense challenge the stop in the lower court? No, Your Honor, which is my argument here today, is that counsel's entire strategy at trial was to challenge the identification evidence and specifically the complainant's inability to identify my client from the show-up, but she still failed to file a motion to cross-arrest and suppress evidence. That was the strongest course of action for counsel at that time. Success on that motion would have excluded the most damaging evidence that came in at trial. I think it would have made it very unlikely the state could have proceeded in this case. I think it was just an oversight on counsel's part that was extremely prejudicial. But if you're wrong in your Terry analysis, which, you know, you might be, if you're wrong on that, then counsel really wasn't effective for filing what would otherwise be a fruitless motion. Respectfully, Your Honor, I disagree because, as I pointed out in my brief, the police also need individualized reasonable suspicion to conduct a Terry frisk and they had no reason to believe my client was armed and dangerous. All right. They didn't conduct a frisk until after he was under arrest. The phone you're talking about, that was after an arrest was made. What they did was conduct a brief show-up, which they're allowed to do under Terry if they have a reasonable suspicion that criminal activity is foot. Correct. But, again, my client was not identified in the show-up, so there's no justification for a search incident to arrest. And isn't there a dispute about whether or not your client was identified? The state is disputing that, yes, but at trial, the officer, the only officer who was present with the complainant during the show-up testified that the complainant did not identify my client. He identified one person. It was Diamante. And that testimony is actually consistent with Brown's testimony at the adjudicatory hearing because, ultimately, he admits not identifying my client during the show-up, not recognizing my client until he was at the police station, after my client was arrested, and after police showed him a picture of my client and said, we found your phone on this person. Do you recognize him? He said he was sure of him after they showed him a picture of the respondent and his description was he had a square-shaped head. Correct. He actually gave that testimony immediately after saying that he did not get a good look at my client's face. Did one of the officers say that the victim, the minor victim, he was also minor, wasn't he? Yes, Your Honor. Didn't one of the officers say he identified your client? Detective Watts testified that Brown, the complainant, identified my client during the show-up. Detective Watts was not in the car with Brown while that identification was supposedly made. It was hearsay. We have no idea how he got this information. He didn't testify as to how he learned it. What do you mean it was hearsay? An identification made to another person. It was made to you. It's not hearsay. It's admissible as an exception to the hearsay rule. There's legions of cases regarding that. We don't understand how Watts, where this information came from. He didn't see by his own testimony. He did not see or hear the complainant identify my client. The only officer who was present with the complainant did not identify my client. Watts testified unequivocally that the victim identified the defendant during the show-up, didn't he? Watts, who was not present, did say that. What do you mean he wasn't present? He was not in the car. The show-up was conducted with- Go ahead, Justice Court. Okay. Shall I continue? In the testimony of Watts, he was never questioned about how he knew the results of the identification. That's right, Your Honor. Whatever you're saying is speculation. In what way? I'm not sure. I would like to address that because I think his testimony has to be speculation. Watts testified that the victim identified the defendant. Right. And there's very little examination concerning how he knew this. Right. We know, though, that he did not learn that from firsthand knowledge. How do you know that? Because he wasn't there. The officer who was there testified that the complainant did not identify my client. And there was- When you say he wasn't there, what you mean is he wasn't in the car. He was in the car with the complainant and did not hear what the complainant said. That officer is not impeached in any way. There's really no reason for the trial judge to reject that testimony, particularly where it's consistent with the complainant's own testimony. The complainant ultimately concluded, first of all, explicitly said he did not identify my client during the show-up, and then said, I identified the boy in the jean jacket who he knows, Diamante. So we have basically the complainant saying he identified Diamante. We have the police officer who was in the car with the complainant when he identified Diamante saying he identified Diamante. And then we have an officer who was not in the car who said- Well, let's look at the record a little bit here. You're saying that the victim never identified him at the show-up. But the record really doesn't support that. What the record supports is he was asked on direct examination, and it's in the record, at the show-up he was asked, and were you able to identify anyone? And he said, yes. Unequivocally. That. And was the minor respondent one of the persons you identified? And he said, yes. And then he was asked, and what did you identify him as having done that day to the police officer? I said, that's one of the kids that slapped me. Now, so he did testify on direct that he made an identification. On cross, he says, okay, so it wasn't until you were back at the police station and the police had actually showed you a photo of my client and told you that the phone was found on the person that you identified him. Is that correct? Yes. Now, although that exchange may cast doubt on his earlier testimony, you can't really remove that from whether, you know, he identified him. Well, Your Honor, on page 41, I believe, the public defender asked the complainant, so you never actually picked out my client at the scene of Potbelly's, right? And he says, no. I mean, the complainant was confused. Well, of course he was. He said they all switched clothes. Except for Diamante, the person he identified. But then on redirect, he also clarified his testimony during the show out. He said, I identified respondent as one of the main guys who was talking to me that whole time at the park. But I had doubt until they pulled up in his picture. They pulled up his picture and showed me at the station close up. So, I mean, there's certainly room for discussion, but to say he never identified him is not really an accurate description of the record. Your Honor, he concluded that he identified, he was confused at the time of the show and confused during the adjudicatory hearing, and it's clear why. He admits he didn't see or have an opportunity to really see these people. He obviously doesn't remember much about what happened. He didn't know if initially this happened at 2 o'clock or 5 o'clock, what time of day it was. He has really no description of any of these people. And he concluded that he identified the boy in the jean jacket who he was saying was my client after he said he wasn't my client. Could you call this a tentative identification? I would say this is not an identification. All right. Let's assume for purposes of argument it's a tentative identification. Based on the record in front of us, which we have. Now, are you aware that even a tentative identification can amount to probable cause? Yes, Your Honor. The question, though, is knowing, as trial counsel did, that an officer who is the only officer present with the complainant would testify that the complainant did not identify, not made a tentative identification, but did not identify my client. Should she file a motion to cross arrest and suppress evidence? Yes. All right. Let's get on to your main issue. Should she have filed a motion? Absolutely, Your Honor. She had information indicating that the police had a certain description of who they were looking for, that my client did not match that description. And then, again, the only officer present she knew would testify, present in the car with the complainant, that he did not, the complainant did not identify my client. Her failure to file that motion allowed the introduction of a post-arrest identification. It allowed the introduction of the complainant's cell phone. And that is extremely damaging evidence. That's counsel's job is to keep out evidence that shouldn't come in. Those were the fruits of an illegal arrest. Isn't the issue before us one of probable cause and not guilt beyond a reasonable doubt? The issue before us, well, the issue would be if, had counsel filed the motion, did police have probable cause? Right. And there are no facts establishing probable cause. My client, again, did not match a description. The only fact that is consistent with my client and the information police had was that my client is an African-American teenager. Well, is the record, can we look back now, look at the entire record? Normally we can't. Oh. For establishing probable cause. Well, the standard of review is to no vote for an ineffective assistance. I think you would have to look at the entire record to determine whether counsel knew. The motion would have been successful. So are you telling us that a wavering identification cannot be contributed to probable cause? I'm telling you that a failed identification cannot contribute to probable cause. The testimony, there were. Well, there's a tentative identification no matter how you slice it because you've got Watts saying he identified him, you've got the victim saying I identified him on direct, and then there's some wavering on cross, and then you have this later testimony from the young man who was victimized basically explaining that they all changed clothes and there's nothing to contradict that. There's no evidence to contradict that the purple jacket with the stripe was definitely there. That is, in my opinion, rather descriptive. I know you don't think it is, but a purple jacket with stripes is more than we ever get. So after the fact, you have this person saying I was absolutely positive who he was when I saw the photo, but you have this description beforehand, you have a tentative identification, and case law indicates that tentative identification can support the probable cause to effectuate the arrest. Well, we have basically under Your Honor's interpretation, which I do disagree with. I don't think there was an identification. But the trial judge did not have an opportunity to make a credibility determination. Well, that's part of the problem. We're looking at something. Some of the cases suggest this is better left to a post-conviction petition than this court trying to now put it all together and piece it together to decide whether or not. Right. In People v. Little, the court held that... It was the only strategy. Excuse me? In Little. Judge McNulty, I believe. Did she write that opinion? I don't know. Offhand, I'm not sure. I think it was the only strategy. But go on with the case. That if counsel knew the information the police officers had, this would be an appropriate claim for direct appeal. Also, as a juvenile, Edgar doesn't have the opportunity to file a post-conviction petition. So this would be the only time that this argument could be raised. And again, the trial judge did not have the opportunity, based on counsel's failure, to make a creditability determination between the officer and... Well, the officer who was in the car with Brown and the officer who was not. There was no reason to reject the officer's testimony who said, Brown did not identify my client. I think it would be very difficult to reach a conclusion that he was not credible had he testified, as I assume he would at the hearing on the motion to quash and suppress, consistent with his trial testimony. There's just no reason to reject that testimony, where there is a reason to reject the testimony of the other officer, because he does not have first-hand knowledge of the complainant's statement in the car. Because there was no basis for probable cause, there was no individualized suspicion to justify a Terry stop, and no reasonable suspicion at all relating... allowing the officer to conclude that my client was armed and dangerous. Counsel should have filed a motion to quash arrest and suppress evidence. It was likely to change the... It would have been granted, because there's nothing justifying this detention and search, and had a reasonable likelihood of changing the outcome at trial, because there was no evidence after that. You also argue that if she didn't have this knowledge at the time, or prior to the trial, or the proceedings, the delinquency proceedings, that she would have had it at some point, and that therefore she should have asked to reopen, or file a motion. Right, that's correct, Your Honor. The state has actually conceded that counsel knew... all of the information that would have been relevant to file this motion. But should you disagree, as I argued in my brief, the attorney then should have asked the court to file the motion after either Watts testified and she realized that the complainant didn't match the description, or I'm sorry, Edgar didn't match the description of the people they were looking for, or after the complainant testified that he identified the boy in the black jacket who was Diamante. If there are no further questions, I would ask that you reverse Edgar's conviction, and remand this case for an opportunity to file a motion to quash arrest and suppress evidence. And we'll give you some time to rebuttal, Mr. Reyna. Thank you. Thank you, Your Honor. Good morning, Your Honors. Heather Farnsworth on behalf of the people of the state of Illinois. Your Honors, the Fourth Amendment is all about reasonableness. Was it reasonable that these teenagers that were found moments after this robbery and battery occurred, very close by, a few blocks away, that are wearing the same clothes? Before we go into this, there's some confusion in the briefs as to when Edgar C. turns 21. Would you agree it's January 16, 2018? Yes, I would, Your Honor. Okay. Thank you. Sorry to interrupt. That's okay. There was, based on the totality of the facts and circumstances known to these officers, there was reason for a cherry stop, for a show up. It was effectuated very quickly. And during that show up, probable cause arose. And that was based on the vicinity that they were close to where the battery and robbery had just occurred. It's based on them wearing the same clothing, that they were teenagers. And it's based on the identification. The victim here identified one teenager who was wearing a purple jacket and said, he was there, but he wasn't one of the guys that hit me or took my phone. But he was there. To DeMonte, he was there. I recognized him. He's one of the kids that slapped me. And then when asked about respondent on direct, as Your Honor stated, were you able to identify anyone? He said yes. And he said yes again. And he made it very clear to the court that he was able to identify the respondent. On cross-examination, it got a little confusing. Because trial counsel did what she was supposed to do. She poked holes in his identification. She knew there was probable cause to arrest respondent. She knew this was a proper cherry stop. Well, let's talk about that cherry stop just for a moment here. Now, counsel is somehow suggesting that we're supposed to be looking at this sort of in a vacuum and kind of focus in on the respondent and no one else. Now, for purposes of the cherry stop, how would you respond to that? Because the police weren't looking for one person. They were looking for several people. In fact, two people slapped this young man. One slapped him first on the left side of his face, on the right side. And then the other did it on the other side of his face. And then the phone was subsequently taken. But the fact of the matter is that this was not an incident involving an individual. It was an incident involving multiple individuals with multiple descriptions. So how do you respond to the police stopping and detaining what appeared to be a group based on an offense that involved more than one person? The common sense practical approach here, which this Court has said should be applied, is that the officers would stop the group of teenagers that they just heard over the radio were involved in a robbery and a battery. There were 14 teenagers involved. They stopped four teenagers. They were wearing the clothing that was described. They were teenagers, and they were in the vicinity. The police officers did exactly what they were supposed to do. And was it close in time or was it 18 hours later? It was moments later. Minutes? Moments? Moments is kind of extremely brief. Is that how it was described? Officer Lynn testified that it was very soon after it happened because they were told they were leaving the area. The teenagers were seen leaving the scene where the crime just occurred. The park where this occurred? Yes, correct. So are any of those things something we're looking at, or are we throwing those out the window today? You're looking at all of that, Your Honor. You're looking at all of that. It's the reasonableness of the facts and circumstances known to this police officer. And the facts and circumstances are this just happened. These kids are right where it just happened. They're wearing the clothes that were described. In the meantime, Officer Lenhart picks up the victim, drives him over for the show-up. And he's in the car with the victim, asking him if he can identify any of these teenagers. Detective Watts is standing 20 feet away. He's not in another area. He's 20 feet away. And he's told there's a positive identification. So there's something that's transpiring here between these police officers, whether it was tentative, whether it was, I think that's him, and his testimony was, I think that's him who was there. Well, is there any doubt that, was there any kind of a pat-down before the show-up? No, there was not, Your Honor. There was a Terry stop, there was a proper show-up, and probable cause came about during the show-up when the victim identified three out of four of these teenagers. And he said what? He said, that guy was there, but he didn't do anything. He was wearing his jacket. That guy was there, and he slapped me. And I think I recognized him there, and that's the respondent. And at that point, Detective Watts testified. Well, didn't he say the respondent was the one who had the most contact with him during the entire time on direct examination? He said that on redirect. On redirect, when he was asked, I identified him as one of the main guys who was talking to me that whole time at the park. So at this point in time at the trial, you know, the respondent has put this whole thing together. Maybe he wasn't certain of the role that respondent played in that moment of the show-up, but he was certainly sure of it because he was able to describe a physical attribute that the respondent has a square head, and he was able to, and then when given a close-up photograph of him, was sure that that's exactly the role he played. So that was made clear. But in the moment of the show-up, when probable cause arose, Detective Watts testified at that moment he did a search incident to arrest. And they continued their investigation at the police department, and not all the individuals were ultimately arrested. So that was absolutely reasonable for the police officer to conduct that show-up and to arrest based on the probable cause. And for that reason, there was absolutely no basis for a motion to quash arrest. And the trial counsel knew this. And she was more than reasonable in her representation of respondent. Her cross-examination was quite effective. She got this young victim a little bit confused, a little bit backtracking, and poked holes in the identification, which was clearly her strategy. And that's what she did. So a motion to quash arrest and suppress evidence would have been futile here. And there was no error in her or no ineffectiveness in her decision not to file such. There are no other questions, Your Honors. We ask this Court to affirm the minor's adjudication of delinquency. And on that note, if this Court were to find that a motion to quash should have been filed, respondent is only entitled to a hearing on a motion to quash. Thank you. Thank you, Counsel. Serena, would you like to make a brief rebuttal? Thank you, Your Honor. With regard to individualized suspicion, the Fourth Amendment provides every citizen the right to be free from unreasonable searches and seizures. That is an individual right. Terry, Jackson, Harris, Searles, and a bunch of other cases that are cited in the briefs and that can be found, Westlaw, Lexis, confirm that the police need individualized reasonable suspicion. They must articulate specific facts related to the person who's challenging the violation of their rights to justify a Terry stop. The fact that my client was walking near some people who arguably matched a very general, nonspecific description of other people does not give police reason to stop my client. The State argues that this happened close in time. We're not really sure exactly how long after this incident the stop occurred. And they also say that my client was stopped close to the offense, and that is unclear as well. As in the trial court, the State argued that this offense occurred at a park near 97th and California, and that my client was stopped near 95th and Western about a mile away. But they also called the park Veterans Park, which is eight miles from the scene of the stop. So I don't think it can be said with any certainty this happened close to the time of the offense or near the location of the offense. How far away was this? Well, the stop was at 95th and Western. Yes. The State argued that the offense occurred at a park near 97th and California. That distance is about a mile. They called the park Veterans Park, which is actually eight miles east of where the stop is. Okay. So there's some discrepancy about whether it was at Veterans Park or whether it was 97th and California. Near 97th and California. I mean, there's not actually a park right at 97th and California. Where is the park? There are a couple of parks in the general area, but it's not really clear. The park the State claims it happened at was eight miles away. All right. And obviously this is something the State just brought up. The complainant's post-arrest identification of my client cannot be considered in determining whether there's probable cause and also as to whether counsel should have filed a motion to quash arrest and suppress evidence. If there are no further questions, Your Honor, I'd reiterate that there was no individualized suspicion justifying a terrorist stop, nothing but the fact my client was a teenage African-American that would allow this stop. He was not identified, and there should at least be an opportunity for credibility determination where the completely unimpeached credible police officer, the only person who was present to hear what the complainant had to say, admitting he did not identify my client. Counsel should have filed a motion, and I'd ask this Court to reverse my client's conviction and give him that opportunity. All right. The matter was well-argued and well-briefed, and we will take it under advisement. Thank you very much, Your Honor. The Court is now adjourned.